The first speaker argument is 21-2502, District of Minnesota. T. Keith Fogg v. Internal Revenue Service. Ms. Rogers, you may proceed when ready. Thank you, Your Honor. Please declare my name. It's Sean Rogers, and I'm here on behalf of my client, Professor Keith Fogg. This case is fundamentally about an interpretation of Exemption 70 under the Freedom of Information Act, and particularly its application in regard to the redactions that the IRS put in place under 21.123.3, which is ostensibly an administrative process that is used by the IRS when a tax professional calls the agency and is basically looking for his or her client's tax documents, and it verifies their identity. They are, in fact, who they say they are. The IRS has used this Exemption 70 to withhold certain provisions of 21.123.3, which invokes the idea that they are investigations or prosecutions for law enforcement investigations or prosecutions. Excuse me, techniques for law enforcement investigations or prosecutions, which is the statutory language. Again, fundamentally, this question before us here is about the breadth of that statutory language and how it's interpreted. Here, the District Court and the IRS have interpreted it to such an extent where it includes, it is used to redact something that is primarily, if not solely, administrative in nature, and that is used in countless contexts, and it really has a very attenuated connection to an investigation in any ordinary sense of the word. Counsel, what about prevention? Justice Leto, I think, talked about that in the Milner case, and it seems that this potentially goes towards prevention of criminal conduct. Thank you for that question. This gets to the point of how Exemption 70 applies. Just as Leto discussed, and as is apparent, prevention certainly can be potentially a law enforcement— Let me start back. There are two parts of Exemption 70. The first part is it must be compiled for a law enforcement purpose. Though we would submit that that is not the case here, I will not belabor that point. In Milner, Justice Leto was clear that certainly in certain contexts, the language under 70's threshold clause can be broad enough to include what is prevention. I think what should be noted also there is that prior to the 1986 amendments to Exemption 70, the threshold requirement actually used the language for investigations and prosecutions. That was removed. In part, Justice Leto was referencing that it is broader than simply investigations and prosecutions at the threshold level. I think it is important to note that Justice Leto, in that concurrence specifically, went further to indicate that once you get past the threshold portion, in order to invoke the exemption, you must fall into one of the delineated subsets. In this case, the agency specifies Exemption 70. The important part to note about Exemption 70 is that the language for investigations and prosecutions is still there in Exemption 70. We put this in our reply group. There is this type of Venn diagram where certainly if you get in through the first part, and this is more or less what Justice Leto was referring to in Milner, that this idea of prevention that goes beyond Exemption 70 itself can be broader than simply something that is an investigation or prosecution. So your argument then is that the specific provision in which the IRS is invoking that specific language does not include prevention. When you get to the more specific, prevention is not something that the IRS can use to protect its data. Well, so at the first point, there is this prevention analysis, or this prevention is included. When you get to Exemption 70, I'm not going to sit here and say that there are no situations where prevention could coincide with an investigation or prosecution. I think if you look at Justice Leto's analysis in Milner, those would tend to be rare. I wouldn't say that they would be non-existent, but there is certainly a dichotomy between investigations and prosecutions on the one hand and prevention on the other hand. In fact, Justice Leto, in explaining the nature of prevention, juxtaposes particular situations where he's talking about the preventative law enforcement nature with contrasting it with what would be an investigation. Like, for example, a beat cop where he's preventing a crime, but it has nothing to do with an investigation. The reason why I ask is because the prevention here is obvious. Which is to say, the district court didn't conduct any in-camper review. We don't have access to what's in that IRS manual. But the fact of the matter is, let's suppose it says, for example, the redacted portion says, when a taxpayer representative calls, you need to have the city of birth of either the taxpayer or the taxpayer. At that point, then, a person interested in identity theft would just go obtain on the internet the taxpayer's place of birth. In which case, letting out what the IRS is going to be asking basically takes away preventative purpose. And I want to hear your response to that. Sure. Let me take a step back there. So I think there are two points that are important to note in your question. I mean, the one is that certainly we don't know exactly what's in the redacted materials. I think, to the extent, the one thing the district court found was the portions that are unredacted. The items that are in the redacted, factually, follow an administrative process that really would not be considered an investigative tool. But the idea is, here in the IRS, as your question suggests, that the redactions deal with these specialty circumstances and that there's some type of unique nature to the techniques or procedures that are in these redactions. Two points there. One, obviously, there's an informational asymmetry to Professor Fogg and to the IRS. We don't really know what's in there. And this case, in very large part, turns on the actual content of the redactions. And as we've mentioned in our brief, and as you somewhat alluded to, the fact that the district court did not do an in-camera review. And then, in fact, that it did not consider certain factors that it should be required to consider in determining not to do an in-camera review. One of those is, you know, whether the nature of the redactions are actually more or less determinative of the outcome of the case. Another one would be the fact that the segregability analysis here is something that was left, you know, largely not silent. And that goes to in-camera. One last question for you. Another reason why I'm asking the prevention questions is because, arguably, whatever techniques that the IRS is using to try to determine whether the taxpayer's representatives, who he or she says they were, that could be part of an investigation. And I wonder why it's not broad enough to just go into the plain language of an investigation. In other words, I'm using these techniques because somebody's calling on the phone to investigate whether or not I should release confidential information because I don't know who this person is. And I need to investigate and figure out whether they are who they report to be so I can release the information. What's wrong with that analysis? Well, I think if you take a step back for a moment and you look at the nature of 21.3.3 and what we know about, you know, what hasn't been redacted, it would seem that every contextual clue is that the things in the redactions are an administrative process. That they do look to confirm or deny the identity of the person calling and that the techniques or procedures are essentially, you know, the same. They're using certain information that they're asking the caller about and they're cross-referencing it. They're not necessarily different or special in nature other than the parts that are in the rest of 21.3.3. I think to your point, you know, is that an investigation? At some point, the IRS person who the customer and in fact, it's not an agent here. It's a customer service representative that's doing this initial screening. Maybe it does become an investigation, but that would be referred to a different, you know, portion. Is there any evidence in the record that that does occur? That the customer service agents forward these to the law enforcement link for criminal investigation? Certainly in the IRM. And I believe that this is in our brief that there are points, again, not just the customer service representative, but, you know, potentially anybody at the IRS that comes into contact with what they would flag as a potential crime would be referring it to the somebody in the investigative wing. I think I would refer to the portion that discussed civil and criminal investigations in our brief. There is a particular procedure in the IRM how those are referred. So why is it enough that the redacted portions apply to special situations? In other words, when there's red flags and that referrals for criminal investigation can occur as a result of a red flag or a problem as a result of these redacted procedures. I'm sorry, I didn't quite get the end of your question. But I think to the point is one part is that we don't exactly know what the special circumstances situations that they're referring to. I mean, you're saying that they're flying. I mean, that's always the case. These are often the case in litigation. Right. And it's based on the government's declaration here. And as I understand it, you can see that in some cases it is forward to law enforcement. The results of these special procedures. Or am I misstating your position? I think you may be misstating it slightly. Potentially, I think even in the non-quote special circumstances, it's possible that if they identify somebody who is not who they report to be that it would be referred to law enforcement. I would submit that that doesn't necessarily mean that a standard administrative proceeding is itself a tool or a technique or procedure of a law enforcement investigation. But rather that is the Cox or Hawks case might suggest that, you know, that it actually is. Just because there's an administrative procedure that subsequently forward something to become relevant. That doesn't change the nature of it necessarily. And certainly it doesn't transform into a procedure. I'm sorry. Just just one point on your honors. Previously, during the test session, I had reserved two minutes for rebuttal, and I believe that I'm eating into that. Mr. Rogers, you are into rebuttal time. You can save the rest for rebuttal if you'd like. Thank you. I appreciate that. All right. Miss Bradley, you may proceed. Good morning, your honors. May it please the court. The district court here correctly held that the IRS demonstrated through the affidavit of Ms. Barnes that the IRS demonstrated that exemption 7E applies to the internal revenue manual provision here dealing with third party authentication. I don't think there's any dispute in this case that the appellant doesn't agree that identity theft related fraud and the unlawful disclosure of tax return information have been a serious problem for not only IRS, but for for other businesses here. Let me ask you, you mentioned the Barnes affidavit, and I know the IRS relies heavily on that affidavit in this case. That affidavit states that the entire IRM was compiled for law enforcement purposes because the IRS is a law enforcement agency. If this court adopted that view, it would make every internal document of the IRS subject to being withheld from the public under exemption 7. Doesn't that show that the agency's interpretation is wrong? No, your honor. I don't believe so. I think there's no dispute that the IRS has both administrative and law enforcement functions. And as Judge Alito said in the Milner, his concurrence there, that doesn't preclude the IRS from exempting materials that it determines has a law enforcement purpose or is a technique and procedure to help them weed out criminal activities such as identity theft and related fraud. I don't think the IRS. I certainly respect Justice Alito. And but what I want to look at is the actual text of the exemption. And I certainly understand why you would want to keep this information from public disclosure. I think it seems rather obvious that it shouldn't be disclosed. But the trouble I'm having is any finding any textually defensible way to to cram this into exemption 7. Well, we think the district court correctly held without trying to cram it into the exemption that it applies. Again, there seems to be no dispute from Professor Fogg that identity theft and the unlawful dissemination of one of his clients taxpayers information is a serious problem. And here the Internal Revenue Manual provision, in large part, is publicly available. It's only those specific portions, as was previously referred to, that gets to those kind of unique situations where a call center IRS employee, you know, some red flags are going up. And as the gatekeeper of the taxpayer's information, you know, we don't want to violate that. And in those specific situations, which may not even necessarily be the norm, I guess if the call's going fine and all of the information is forthcoming and there's no suspicion of any sort of nefarious behavior on the part of the caller. We may not even get to those additional questions. Counsel, Judge Kobus here, going back to one of Judge Strauss' questions. It seems clear to me, at least, that this serves a preventative function. I think the more difficult question for me is linking that preventative function to the text of 7E, and that is disclosing techniques and procedures for law enforcement investigations or prosecutions. So can you explain to me the government's position on, I understand preventative. I mean, you call into your credit card company, they're going to do similar procedures, some of which are probably confidential. And if you fail those, you may get referred to the fraud department for investigation. That's my question here. With the IRS, how do you link what's clearly, to me, a preventative undertaking by the IRS to the text of 7E? The way I would link it, and this was referred to, I believe it's paragraph 23 of Ms. Barnes' declaration, that specifically states that in situations, again, when the call center thinks that something's amiss, that someone's trying to obtain a taxpayer's private information, in those specific situations, the call center can forward that to the criminal investigation division of the IRS, which indisputably serves a law enforcement function. Again, the provision here is really trying to protect not only the taxpayer, but any third-party authenticator, like a power of attorney. I mean, we don't want somebody to have gotten a power of attorney's information, and then called and tried to use that to obtain information they're not entitled to. But again, that's the preventative function, and I think that I agree with that entirely. The policies in place, I think as Judge Graz indicated, are problematic. It's linking it to the 7E, at least, speaking on my part, that's the really challenging question here. I mean, I think what the IRS does to protect taxpayers is good public policy. Not that it's really my business, but the tougher question is getting it in the text of 7E, I think. Counselor, is there some other exemption that should be applied here? How does the agency keep its passwords secret, for example? Passwords pertaining to what? Entry into your computer systems. Quite frankly, I don't know the answer to that question. Well, to get back to Judge Kobus' point, are these redacted procedures, which we don't know what they are, are they actually used again by law enforcement when the investigation happens, or are they limited to the customer service refs when they call in? I'm not asking whether the customer service refs advance the answers or the results of them to the investigators. I'm asking whether the investigators use some of those procedures during a fraud investigation to question somebody who reports to be the taxpayer or taxpayer's representative. I don't really think I know exactly what the Criminal Investigation Division would do in the circumstance that a call center forwards the information, but I would assume the Criminal Investigation Division would want to know what information the caller or the third party provided to the IRS, be it their CAF number, their power of attorney number, address, social security number. I think all of that information would definitely come into play for purposes of an investigation. You see why I'm asking the question? Because it says law enforcement records or information, and it says would disclose techniques and procedures for law enforcement investigations or prosecutions. And the best way to me, I'm not saying that the IRS hasn't met that requirement, but what I am saying is it would be more of a slam dunk if those redacted procedures were actually used by law enforcement in further communications with the taxpayer. Unfortunately, that specific information I'm not aware is in the record. And again, case law have held that law enforcement isn't so narrow. It is more broadly encompassing where when the call is put in that the call center is developing leads and taking proactive steps to prevent any sort of a crime. And there's been several cases, I believe in the D.C. Circuit, the one being public employees for environmental responsibility, where again, a court of appeals has held that Exemption 7E applies to plans to prevent attacks on IRS dams, that it's preventative purpose, that it's not actually an investigation. That requirement was eliminated as part of the FOIA 1986 amendments. But again, counsel, I think that if you look at Justice Alito's reasoning, that gets you past the law enforcement purposes portion, but I don't see how that answers the question of investigations and prosecution. It's kind of a two-step process. I understand, but again, I think that law enforcement techniques and procedures are more broadly encompassing, just as Judge Alito referenced, just a regular cop on his beat or proactive steps by the Secret Service. Those type of actions or procedures do fall within Exemption 7E's second requirement. And here, I think there can be no dispute that the IRS, with these special procedures that are used, again, in those situations where someone at the call center's radar goes up that something amiss, that's only when they come into play. And again, it's- Counsel, I want to ask you, I want to go back, and it relates directly to that. When Judge Ross asked you a question, I didn't see this in the record at first glance, but it raises red flags for me. If the IRS, if the affidavit that's being used, if the IRS is saying that everything, even those unredacted portions, are part of the law enforcement investigation or procedures, that suggests to me that we should remand for in-camera review, because that can't be. You admitted at the beginning of your argument that part of what the IRS does is administrative and part of it is enforcement. I've seen the IRM enough to know that part of it is administrative. So if the IRS's position is that everything's law enforcement, that indicates to me that we cannot trust the IRS to make this determination. What's wrong with that reasoning? I don't think the IRS is taking the position that everything in that provision is law enforcement. The vast majority- Counsel, you submitted the affidavit of Barnes, and that's paragraph 29 of that affidavit. And again, the only reason a court would conduct an in-camera review is if the IRS affidavit was, if there was some suspicion of bad faith on the part of the agency. Here, I don't think there's any evidence, as the district court found, that there was any sort of bad faith on the IRS. I would submit that it's wrong. I mean, even if we've said that, I would submit it's got to be wrong. If the IRS is operating under the assumption that everything is law enforcement, like 100% of it, that would be a good reason to remand, because we wouldn't be able to trust the judgment of the person submitting the affidavit. There may not be bad faith. You may honestly believe that. But it certainly colors whether we can trust what that person says. As I would refer back to, again, the only reason that an in-camera inspection would occur is if for some reason the agency's justification for withholding the information demonstrates that it doesn't logically fall in here. The IRS, again, when that provision first came out, the IRS regularly reviews its IRM provisions to make sure that what it can disclose, it does disclose. Counsel, switching gears a little bit, would you call the IRS simply a law enforcement agency or a mixed-purpose agency? I think the IRS is a mixed-purpose agency. I tend to agree, but the declaration, again, in paragraph 29 says the IRS, comma, a law enforcement agency. So piggybacking on what Judge Strauss said, doesn't that reflect another kind of legal error on the face of the declaration that the district court relied on? Now, it doesn't say exclusively, but the assumption here appears to be that the entire IRS is a law enforcement agency, which I think you and I agree is not accurate. I think, again, this provision of the paragraph 29 is just trying to demonstrate that that provision has law enforcement applicability. And I think, again, there's no dispute here that we're trying to protect taxpayers and their power of attorneys from disclosing information to them. We're actually trying to protect the taxpayer and the power of attorney. There is an exclusion for that if the taxpayer is either, I believe, in the room with the third party as they're calling in or on the phone. In those situations, the IRS can be assured that, in fact, there isn't a monkey business going on, that the taxpayer has, in fact, authorized the third party to receive their information. Your time is expiring, but I do have one last question, if I could. It seems to me this entire situation could have been prevented had the agency kept the sensitive information in an interagency memorandum under Exemption 5 rather than printing it in the IRM, and we wouldn't be here today. Unfortunately, I can't speak to the other exemption, but I think the district court here did an exhaustive examination of the IRM Exemption 7E, and here, again, the government maintains the district court correctly held that the redacted provisions were compiled for law enforcement and do, in fact, have techniques and procedures to be able to proactively weed out any sort of mischief on behalf of a caller and that, in this situation, there was no need for in-camera review. Again, as this court has previously long ago held, in-camera is really not the open judicial forum where all of the information is available to both sides, but it's reserved for those specific instances where there's some bad faith, and here, again, we believe that the district court properly determined that there was no bad faith. Thank you, Ms. Bradley. How much time does Mr. Rogers have for rebuttal? Oh, okay. You have a minute and 30. Thank you, Your Honor. I'll just keep this quick to two or three points. The first, when we're talking about in-camera review and agency bad faith, bad faith doesn't necessarily mean that IRS was a bad actor or a bad person. It means that the characterization of the redacted material, at least in part, would mean that the characterization of the redacted material is contrary to the context of the 21.3.3 procedure. In other words, that everything else points to it being simply an administrative process, but the IRS is saying there's these special circumstances that bring it under 7E specifically. And I think one point that my opposing counsel made when asked what procedures or techniques that law enforcement, when it's referred to, would they still use? She cited that they would be interested in the CAF number, the social security number, and the address. I think one notable point there is that all three of those things are actually addressed in the unredacted portions. So it does beg the question exactly what the distinction between the redactions and the unredactions are, what type of special circumstances. And I think this is the type of extraordinary situation where in-camera review would be warranted, particularly given the fact that it largely turns in a small handful of paragraphs in these redactions. We're not talking about 1,000 pages here. Thank you, Your Honor. All right. Thank you. Thanks to both counsel. It's a very interesting case and was well argued. And case number 21-2502 is submitted for decision by the court.